On appellant's petition for reconsideration filed July 1, and respondent's response to appellant's petition for reconsideration filed July 16, reconsideration allowed; former disposition (229 Or App 236, 211 P3d 984) adhered to September 23, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LUCAS CHAPMAN BERGIN,
*Defendant-Appellant.*

Multnomah County Circuit Court
061154790; A136490

217 P3d 1087

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, for petition.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, for response.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant petitions for reconsideration of our disposition in *State v. Bergin*, 229 Or App 236, 211 P3d 984 (2009). In that case, we affirmed without opinion his conviction for driving under the influence of intoxicants (DUII). He argued that the trial court erred in admitting, over his objection, certificates attesting to the accuracy of the Intoxilyzer that was used to test his breath, because the state had not demonstrated that the technician who created the certificates was unavailable at trial and that defendant previously had had the opportunity to cross-examine him or her. Defendant correctly infers that we affirmed his conviction because his argument under the Oregon Constitution was decided adversely to his position in *State v. William*, 199 Or App 191, 110 P3d 1114, *rev den*, 339 Or 406 (2005), and his argument based on the Sixth Amendment to the United States Constitution was decided adversely to his position in *State v. Norman*, 203 Or App 1, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006). In his petition for reconsideration, he now argues that, eight days after our decision in his case, the United States Supreme Court "implicitly overruled *Norman*" in *Melendez-Diaz v. Massachusetts*, ___ US ___ , 129 S Ct 2527, 174 L Ed 2d 314 (2009). We grant defendant's petition and, on reconsideration, adhere to our former disposition, because we conclude that *Melendez-Diaz* did not overrule *Norman*.

In *Norman*, we examined the effect of *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), on the admissibility of certificates attesting to the accuracy of Intoxilyzers. *Crawford*, of course, held that out-of-court testimonial statements were inadmissible unless the declarant was unavailable and the defendant had had a prior opportunity for cross-examination. *Id.* at 53-54. We explained that, "[u]nder *Crawford*, the threshold question is whether an out-of-court statement is 'testimonial.' " *Norman*, 203 Or App at 6. We then held that, for three reasons, Intoxilyzer certificates of accuracy were not "testimonial":

> "First, the certifications in this case do not resemble the classic kind of testimonial evidence at which the Confrontation Clause was aimed—*ex parte* examinations of

witnesses intended to be used to convict a particular defendant of a crime. Rather, the certifications are evidence about the accuracy of a test result arrived at by a machine. They were created by state employees in the course of carrying out routine ministerial duties required by statute and administrative rule to certify the accuracy of test results of Intoxilyzer machines. * * *

"Second, the *Crawford* court emphasized the investigative and prosecutorial functions held by seventeenth and eighteenth-century English justices of the peace, observing that police officers and prosecutors perform a similar function today. It is the exercise of those kinds of functions that implicate the Sixth Amendment right to confront. But here, there is no evidence in the record that the technicians were functioning as the proxy of the police investigation concerning defendant * * *. Rather, it appears that they were merely ensuring that the machines operated properly and provided accurate readings before and after defendant's test result was obtained. * * *

"Third, * * * [b]ecause the Sixth Amendment is implicitly deemed to incorporate the hearsay exceptions established at the time of the founding, it follows that modern-day hearsay exceptions enacted by statute will not be deemed testimonial in nature if they parallel the hearsay exceptions that were not by their nature testimonial at common law * * *. Here, the certifications of the accuracy of an Intoxilyzer machine in Oregon are more akin to hearsay statements that were not considered testimonial in nature at common law, such as public or business records."

*Id.* at 6-8 (internal citation omitted).

Defendant, as noted, now argues that this reasoning is undercut by *Melendez-Diaz*. In that case, the Court, in what it called a "rather straightforward application" of *Crawford*, *Melendez-Diaz*, ___ US at ___ , 129 S Ct at 2533, held that affidavits from a forensic analyst showing that the substance seized from the defendant was cocaine were "testimonial" and inadmissible because the state did not establish that the analyst was unavailable and the defendant had had the opportunity for cross-examination. *Id.* at ___ , 129 S Ct at 2532. Defendant correctly points out statements in the *Melendez-Diaz* opinion that appear to call into question some of the reasoning on which the outcome in *Norman* was

based. For example, we reasoned that the statements of an Intoxilyzer technician are unlike the "classic kind of testimonial evidence at which the Confrontation Clause was aimed" and that the technician does not perform functions that are analogous to "investigative and prosecutorial functions" exercised by those for whom the Confrontation Clause was originally intended. *Norman*, 203 Or App at 6-7. The *Melendez-Diaz* Court, however, in response to similar arguments from the state and the dissent, points out that the forensic evidence is "testimony *against*" the defendant, and that "there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation." ____ US at ____ , 129 S Ct at 2534 (emphasis in original). Further, we reasoned in *Norman*, 203 Or App at 7, that the technicians "have no demonstrable interest in whether the certifications produce evidence that is favorable or adverse to a particular defendant." In a lengthy section of *Melendez-Diaz*, Justice Scalia explains that, indeed, forensic analysts are subject to pressure to "alter the evidence in a manner favorable to the prosecution," and, on occasion, give in to that pressure. ____ US at ____ , 129 S Ct at 2536.

We also relied on the argument that Intoxilyzer certificates of accuracy are analogous to business records and therefore, from a historical perspective, not testimonial. *Norman*, 203 Or App at 7-8. The *Melendez-Diaz* majority, however, rejects that argument as well, explaining, "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. But that is not the case if the regularly conducted business activity is the production of evidence for use at trial." ____ US at ____ , 129 S Ct at 2538 (internal citation omitted). Further, even if the certificates are business records for purposes of the evidence code, the Court explained, "the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment." *Id.* at ____ , 129 S Ct at 2540.

On the other hand, *Melendez-Diaz* is distinguishable from *Norman* (and, by extension, petitioner's case) in important ways. The analyst certificates in *Melendez-Diaz* were "quite plainly affidavits," that is, fact statements sworn

before an officer authorized to administer oaths, and, for that reason, within the core class of testimonial statements described in *Crawford. Id.* at ____ , 129 S Ct at 2532. Intoxilyzer certificates of accuracy, on the other hand, are not sworn under oath. Further, the analyst certificates in *Melendez-Diaz* served to prove *directly* a fact that is an element of the crime that the defendant was convicted of. Intoxilyzer certificates bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level). Finally, the *Melendez-Diaz* majority opinion emphasizes that, when an analyst swears to the result of a substance test, he or she knows that it is for use at a specific later trial against a specific defendant. *Id.* at ____ , 129 S Ct at 2539. The substance that was subjected to analysis was seized from a particular defendant and the sole purpose of the test was for use against that defendant. Although Intoxilyzers produce evidence that is used only in criminal prosecutions or administrative hearings, the person who performs the test of a machine's accuracy does so with no *particular* prosecutorial use in mind, and, indeed, there is no guarantee that the machine will ever, in fact, be used. Intoxilyzer certificates of accuracy are kept for *possible* use at trial or administrative hearing. ORS 813.160(1)(b)(C).[1] When such a certificate is produced, the technician does not know when it will be used or if it will be used at all. In other words, the chemical analysis in *Melendez-Diaz* would be analogous to an Intoxilyzer certification if such a certification were performed in conjunction with each particular administration of a breath test.

It is perhaps this last distinction that underlies the statement in *Melendez-Diaz* that ultimately convinces us

---

[1] ORS 813.160(1)(b)(C) provides that a breath test is valid if the Department of State Police has

"[t]est[ed] and certif[ied] the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of the equipment and periodically thereafter at intervals of not more than 90 days. Tests and certification required by this subparagraph must be conducted by trained technicians. Certification under this subparagraph does not require a signed document."

The certificates in this case reported tests on October 31, 2006, and December 21, 2006; defendant was tested in November 2006.

that the case does not require overruling *Norman*. In a dissenting opinion, Justice Kennedy argues:

> "Consider the independent contractor who has calibrated the testing machine. At least in a routine case, where the machine's result appears unmistakable, that result's accuracy depends entirely on the machine's calibration. The calibration, in turn, can be proved only by the contractor's certification that he or she did the job properly. That certification appears to be a testimonial statement under the Court's definition * * *."

*Id.* at _____ , 129 S Ct at 2545 (Kennedy, J., dissenting). Justice Scalia for the majority responds:

> "Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or *accuracy of the testing device*, must appear in person as part of the prosecution's case. * * * [D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records."

*Id.* at _____ n 1, 129 S Ct at 2532 n 1 (emphasis added). Based on this point-counterpoint, we conclude that *Melendez-Diaz* either rejects, or at least leaves open, the question of whether Intoxilyzer certificates used in Oregon DUII prosecutions are "testimonial." Because neither the Oregon Supreme Court nor the United States Supreme Court has rejected our analysis in *Norman*, we do not consider it to be overruled. For that reason, we also adhere to our disposition in this case.

Reconsideration allowed; former disposition adhered to.