NO. 4-09-0878     Filed 11/1/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from
       Plaintiff-Appellee, ) Circuit Court of
       v. ) Champaign County
DREW M. JACOBS, ) No. 07DT625
       Defendant-Appellant. )
        ) Honorable
        ) Charles McRae Leonhard,
        ) Judge Presiding.
_____

JUSTICE TURNER delivered the opinion of the court:

In May 2009, a jury found defendant, Drew M. Jacobs, guilty of driving under the influence of alcohol and driving with an alcohol concentration of 0.08 or more.  In October 2009, the trial court sentenced him to 24 months' conditional discharge.

On appeal, defendant argues (1) evidence of chemical testing was improperly admitted, (2) the State failed to prove him guilty beyond a reasonable doubt, (3) the trial court should have entered judgment on the count of driving under the influence, (4) the State deprived him of a fair trial, and (5) the court erred in giving certain jury instructions.  We affirm.

I. BACKGROUND

In September 2007, defendant was charged by citation with two counts of driving under the influence (625 ILCS 5/11-501(a) (West 2006)).  Defendant pleaded not guilty.

In December 2007, defendant filed a petition to rescind

statutory summary suspension and a motion to quash arrest and suppress evidence. In April 2008, the trial court denied the petition and the motion. Defendant appealed, and this court affirmed the trial court's judgment. People v. Jacobs, No. 4-08-0330 (April 15, 2009) (unpublished order under Supreme Court Rule 23).

In May 2009, defendant filed several motions in limine, asking the trial court to prohibit the State from proffering testimony pertaining to the horizontal gaze nystagmus (HGN) test and a preliminary breath test (PBT). The court allowed the motion regarding the HGN test and also allowed the motion as to the PBT, subject to the defense opening the door at trial.

At defendant's jury trial, Monica Strandberg testified she was a trooper with the Illinois State Police. On September 13, 2007, Strandberg was on routine patrol in Champaign County when she observed a white Ford with its "bright lights on." Strandberg stated it was a violation of the Vehicle Code to have "your high beams on within 500 feet of another vehicle," so she initiated a traffic stop at 2:50 a.m. As the driver of the Ford entered a parking lot, "the rear tire hit the curb."

Trooper Strandberg approached the driver, identified as defendant, and noticed "he had a flush face" and "red and glossy eyes." She could also "smell a strong odor of an alcoholic beverage coming from his breath." When she asked defendant

whether he had been consuming alcohol, he responded he had two beers. Defendant did not have any trouble producing his driver's license and proof of insurance.

Strandberg then asked defendant to exit the vehicle to perform field-sobriety tests. Defendant performed the nine-step-walk-and-turn test, and Strandberg stated he did "fine." Defendant then performed the one-legged-stand test, and Strandberg considered his performance a failure because he "swayed slightly" and "raised his arms more than six inches past his side." She then placed defendant under arrest for driving under the influence of alcohol based on the strong smell of alcohol coming from his breath, his failure on the field-sobriety test, his flush face and red glassy eyes, and his "driving up over the curb."

Trooper Strandberg transported defendant to the police station, issued him a citation, and read to him the warning to motorists. Defendant then agreed to take a Breathalyzer test. Strandberg testified she was certified to administer the test. She used the Intox EC/IR and testified to a logbook the police department maintains on the use of the machine. The test result showed 0.11 at 4 a.m. Strandberg then issued defendant a second citation for driving under the influence of alcohol over 0.08.

The State played the tape of the stop to the jury. After the State rested its case, defense counsel moved for a directed verdict, which the trial court denied.

The defense then called Dr. Ronald Henson, who testified as an expert in impaired-driving enforcement, field-sobriety testing and blood- and breath-alcohol testing. Dr. Henson reviewed documents relating to defendant's arrest. After reviewing the video, Dr. Henson stated he did not notice any recognized cues that would indicate defendant did not perform the one-legged-stand test or the walk-and-turn test correctly. He then opined there existed a "disconnect" between defendant's performance and his 0.11 breath-alcohol reading.

On rebuttal, Todd Savage testified he was a breath-alcohol technician with the Illinois State Police. The trial court recognized him as an expert in the operation, maintenance, and repair of the EC/IR instrument. Savage stated he travels around to police agencies and sheriff's departments to make sure the EC/IR devices are accurate and working properly. Upon checking the devices for accuracy, he would note the results in a logbook. He checked the accuracy of the EC/IR at the Champaign County satellite jail on September 6, 2007, and again on October 4, 2007.

Following Savage's testimony, defense counsel moved for a directed verdict at the close of all the evidence, which the trial court denied. Following closing arguments, the jury found defendant guilty.

In June 2009, defendant filed a posttrial motion, which

the trial court denied.  In October 2009, the court entered judgment on the count of driving with a blood- or breath-alcohol concentration (BAC) of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2006)) and sentenced defendant to 24 months' conditional discharge.  This appeal followed.

## II. ANALYSIS

### A. Chemical Testing

Defendant argues the State improperly introduced the results of the Breathalyzer test in its case in chief by failing to provide a proper foundation that the device was tested regularly for accuracy and was working properly.  We disagree.

In determining the foundational requirements of breath-test results, our supreme court has noted as follows:

> "Such a foundation will include:  (1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite

20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist." People v. Orth, 124 Ill. 2d 326, 340, 530 N.E.2d 210, 216-17 (1988).

Evidence that the Breathalyzer was regularly tested for accuracy is among the elements of the foundation required for the admission of the breath-test results. People v. Black, 84 Ill. App. 3d 1050, 1052, 406 N.E.2d 23, 24 (1980). A "police officer's testimony about the inspection of the [B]reathalyzer may be documented by introduction into evidence of the instrument logbook, which is a public or official record." People v. Boughton, 268 Ill. App. 3d 170, 173, 644 N.E.2d 471, 473 (1994); see also People v. Thomas, 200 Ill. App. 3d 268, 281, 558 N.E.2d 656, 665-66 (1990) (finding copies of certification stamps and logbook entries, along with an officer's testimony of inspection dates, established proper foundation that Breathalyzer machine was reliable and accurate); People v. White, 167 Ill. App. 3d 439, 442, 521 N.E.2d 563, 564 (1988) (finding logbook entries constituted official documents); People v. Hester, 88 Ill. App. 3d 391, 395, 410 N.E.2d 638, 641 (1980) (holding "a page from the instrument log book is admissible to satisfy a foundation re-

quirement requisite to the admission of breath[-]test results into evidence, namely, that the [B]reathalyzer was properly tested for accuracy and in proper working condition").

In the case sub judice, Trooper Strandberg testified that a logbook was maintained at the jail in relation to the breath-test device.  Every time the device is used, the test subject's name is written down and the result entered.  Over defense counsel's objections, Strandberg testified the device was required to be certified every 62 days and the certification listed in the logbook.  She indicated the device had been certified as accurate by a state trooper on September 6, 2007, and again on October 4, 2007.  The logbook entries were admitted into evidence.  We find the State established a proper foundation through Trooper Strandberg that the device was tested regularly for accuracy and was working properly.  See Hester, 88 Ill. App. 3d at 395, 410 N.E.2d at 640 (finding even that "personal knowledge, as to the events and procedures summarized in the log, is not required of the testifying officer").

Defendant, however, argues the foundation testimony regarding the accuracy of a Breathalyzer instrument violated the confrontation clause of the United States Constitution in light of the Supreme Court's decision in Melendez-Diaz v. Massachusetts, 557 U.S. ___, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009).

The confrontation clause provides that "[i]n all

criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him."  U.S. Const., amend. VI.  This sixth-amendment right applies to the states through the fourteenth amendment.  People v. Stechly, 225 Ill. 2d 246, 264, 870 N.E.2d 333, 346 (2007).

In Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2530, the defendant was charged with distributing and trafficking cocaine.  At trial, the prosecution "submitted three 'certificates of analysis' showing the results of the forensic analysis performed on the seized substances," including the weight of the seized bags and that the substance contained cocaine.  Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531.  The certificates were sworn to before a notary public by state lab analysts as required by Massachusetts law and were admitted as prima facie evidence of the composition, quality, and net weight of the contraband analyzed.  Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531.

The defendant objected to the admission of the certificates and argued the Supreme Court's confrontation-clause decision in Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), required the analysts to testify in person.  Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531.  The objection was overruled, and a jury

found the defendant guilty.

The Supreme Court noted the confrontation clause covers testimonial statements and "[a] witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320-21, 129 S. Ct. at 2531, citing Crawford, 541 U.S. at 54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365-66. Examples of testimonial statements include (1) ex parte in-court testimony; (2) extrajudicial statements in formal testimonial materials such as affidavits, depositions, prior testimony, and confessions; (3) statements made under circumstances that would lead an objective witness reasonably to believe the statements would be available for use at a later trial; and (4) statements taken by police officers in the course of interrogations. Crawford, 541 U.S. at 51-52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.

The Supreme Court found the certificates were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" (Emphasis omitted.) Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 321, 129 S. Ct. at 2532, quoting Davis v. Washington, 547 U.S. 813, 830, 165 L. Ed. 2d 224, 242, 126 S. Ct. 2266, 2278 (2006). The Court held that "under our decision in Crawford the analysts' affidavits

were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to '"be confronted with"' the analysts at trial." Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2532, quoting Crawford, 541 U.S. at 54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365.

In his concurring opinion, Justice Thomas reiterated his view that "'the Confrontation Clause is implicated by extra-judicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 333, 129 S. Ct. at 2543 (Thomas, J., concurring), quoting White v. Illinois, 502 U.S. 346, 365, 116 L. Ed. 2d 848, 865, 112 S. Ct. 736, 747 (1992) (Thomas, J., concurring in part and concurring in the judgment, joined by Scalia, J.). Justice Thomas joined the Court's opinion because the certificates were affidavits and therefore testimonial statements. Melendez-Diaz, 557 U.S. at __, 174 L. Ed. 2d at 333, 129 S. Ct. at 2543 (Thomas, J., concurring).

The Supreme Court also stated the analysts' affidavits did not qualify as official or business records. Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 328, 129 S. Ct. at 2538.

˅ 10 ˅

"Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial." Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 329, 129 S. Ct. at 2539-40. The Court found the analysts' affidavits were testimony against the defendant because they were prepared specifically for use at trial. Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 329-30, 129 S. Ct. at 2540.

We note the Supreme Court did not hold "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." Melendez-Diaz, 557 U.S. at ___ n.1, 174 L. Ed. 2d at 322 n.1, 129 S. Ct. at 2532 n.1. Thus, in this case, the question becomes whether the testimony pertaining to the testing of the Breathalyzer for accuracy was testimonial in nature.

We find the testimony and logbooks provided in this case as to the certification of the Breathalyzer were not testimonial and established a sufficient foundation that it was regularly tested and accurate. We also find our decision is not contravened by the Supreme Court's decision in Melendez-Diaz. We find support for this contention in a recent case from the Oregon

Court of Appeals. In State v. Bergin, 231 Or. App. 36, 39, 217 P.3d 1087, 1088 (2009), the defendant argued the admission of certificates attesting to the accuracy of the Intoxilyzer was in error under Melendez-Diaz. The Oregon Court of Appeals disagreed and stated, in part, as follows:

> "The analyst certificates in Melendez-Diaz were 'quite plainly affidavits,' that is, fact statements sworn before an officer authorized to administer oaths, and, for that reason, within the core class of testimonial statements described in Crawford. [Citation.] Intoxilyzer certificates of accuracy, on the other hand, are not sworn under oath. Further, the analyst certificates in Melendez-Diaz served to prove directly a fact that is an element of the crime that the defendant was convicted of. Intoxilyzer certificates bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood[-]alcohol level). Finally, the Melendez-Diaz majority opinion emphasizes that[,] when an analyst swears to the result

of a substance test, he or she knows that it is for use at a specific later trial against a specific defendant. [Citation.] The substance that was subjected to analysis was seized from a particular defendant and the sole purpose of the test was for use against that defendant. Although Intoxilyzers produce evidence that is used only in criminal prosecutions or administrative hearings, the person who performs the test of a machine's accuracy does so with no *particular* prosecutorial use in mind, and, indeed, there is no guarantee that the machine will ever, in fact, be used." (Emphases in original.) Bergin, 231 Or. App. at 40-41, 217 P.3d at 1089.

The certifications of accuracy at issue here differ from the affidavits in Melendez-Diaz and do not establish an element of the offenses. The certifications were not compiled during the investigation of a particular crime and do not establish the criminal wrongdoing of defendant. Cf. People v. McClanahan, 191 Ill. 2d 127, 133, 729 N.E.2d 470, 474 (2000) (finding unconstitutional as violative of confrontation clause a statute that allowed for the introduction of lab reports in lieu

of actual testimony as prima facie evidence of the contents of the substance at issue as the reports, inter alia, were not business records because they were prepared during the course of criminal investigations and requested by the State in anticipation of prosecutions). Instead, the certification does nothing more than establish the machine had been tested and was working properly. Thus, the evidence was not testimonial and its introduction did not violate defendant's right to confront witnesses.

## B. Sufficiency of the Evidence

Defendant argues the State failed to prove him guilty beyond a reasonable doubt. We find this issue forfeited.

> "'A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error.'" People v. Williams, 385 Ill. App. 3d 359, 368, 895 N.E.2d 961, 968 (2008), quoting Obert v. Saville, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928, 931 (1993).

Points not raised in the defendant's initial brief are forfeited and cannot be raised in the reply brief. People v. Patel, 366

Ill. App. 3d 255, 268, 851 N.E.2d 747, 760 (2006).

In his initial brief, defendant cites the relevant standard of review and then goes on to summarize eight cases from the 1960s and 1970s without making an argument on the issue. Defendant states the prior appellate court decisions would be helpful as we "independently review" the evidence. However, defendant has failed to develop his argument and cannot do so in his reply brief. Thus, defendant has forfeited review of this issue on appeal.

C. Judgment on the Count of Driving With a BAC of 0.08 or More

Defendant argues the trial court should have entered judgment on the count of driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2006)). Defendant cites this court's decision in People v. Kizer, 365 Ill. App. 3d 949, 962, 851 N.E.2d 266, 276 (2006), which vacated, without discussion, the conviction for driving with a BAC of 0.08 or more and affirmed the conviction for driving under the influence of alcohol. Defendant offers no argument on how the trial court erred here or how the Kizer decision requires this court to grant his requested relief. We find no error.

D. Prosecutorial Questions and Closing Remarks

Defendant argues he was denied a fair trial as a result of the prosecutor's improper questioning of witnesses and closing argument. We disagree.

"Every defendant is entitled to fair trial free from prejudicial comments by

the prosecution."  People v. Young, 347 Ill. App. 3d 909, 924, 807 N.E.2d 1125, 1137 (2004).  A prosecutor can also overstep his bounds by conduct, including the improper questioning of witnesses.  Young, 347 Ill. App. 3d at 925, 807 N.E.2d at 1138.

Defendant argues Trooper Strandberg gave testimony on the HGN test in violation of the motion in limine.  During the prosecutor's questioning of Strandberg, the following colloquy took place:

"Q.  What was the first test you asked the [d]efendant to perform?

A.  The horizontal gaze nystagmus--er, the nine[-]step[-]walk[-]and[-]turn test.

Q.  The nine[-]step[-]walk[-]and[-]turn test.  Can you describe for the jury what that is?"

A violation of a ruling on a motion in limine will constitute grounds for a mistrial "only when the violation effectively deprived the defendant of his right to a fair trial."  People v. Phillips, 383 Ill. App. 3d 521, 547, 890 N.E.2d 1058, 1081 (2008).  "On appeal, the defendant must show that the prejudicial effect on the jury resulting from the violation of the motion in limine was so great as to constitute reversible error."  People v. Davis, 223 Ill. App. 3d 580, 592, 585 N.E.2d 214, 222 (1992).  We find no reversible error here as the prosecutor did not ask Strandberg about the HGN test and the remark appears to have been made in passing.

Defendant also argues error occurred when Strandberg testified she "read Miranda to him."  Defense counsel objected.  Again, this remark was made in passing and not at the direction of the prosecutor.  We find no error.

Defendant focuses most of his argument on the prosecutor's cross-examination of Dr. Henson.  During his testimony, the following colloquy took place:

"MR. LARSON [(prosecutor)]:  I apologize to the Court.  All right.  Have you, yourself, ever been under the influence of alcohol, Doctor?

MR. KIRCHNER [(defense counsel)]:  Objection.

THE COURT:  The objection's sustained.  The question's stricken.  You may proceed, Mr. Larson.

* * *

Q.  So you have observed other people who you have known to be under the influence of alcohol before?

A.  Yes.  It's [a] common tactic to use videotapes in training.  And they do such at the Police Training Institute today.

Q.  And to go along with that, have you, yourself, ever been under the influence of alcohol?

MR. KIRCHNER:  Objection.  The Court's already ruled on this.

THE COURT:  The objection's sustained.  It's not a relevant inquiry, and I don't believe the inquiry would be of any assistance to the jury in resolving the issues in the case.  And accordingly, the question's once again stricken.  The jury's instructed to disregard it.  Mr. Larson, you may other-

˅ 17 ˅

wise proceed with your cross-examination."

"Generally, the prompt sustaining of an objection by a trial judge is sufficient to cure any error in a question or answer before the jury." People v. Alvine, 173 Ill. 2d 273, 295, 671 N.E.2d 713, 723 (1996). While questions about whether Henson had ever been under the influence of alcohol were not relevant here, we find the trial court cured any prejudicial impact at the time of the objection. Moreover, the court instructed the jury that it was to disregard testimony that was refused or stricken.

Defendant argues the prosecutor tried to discredit Henson by asking him if it was true that "other courts in other counties in this State have not qualified [him] as an expert in EC/IR breath test matters." Henson stated that was untrue. After defense counsel objected and requested a bench conference, the prosecutor stated he had a "reference to Bridgeview Court-house in Cook County" where Henson was disqualified as an expert in a specified case. After further discussion, the trial court sustained the objection, ordered the question stricken, and instructed the jury to disregard the question. Again, any error was cured by the court's actions. See People v. Redd, 173 Ill. 2d 1, 28-29, 670 N.E.2d 583, 597 (1996).

Defendant also complains of remarks made by the prose-cutor during closing arguments. "A prosecutor has wide latitude in making a closing argument and is permitted to comment on the

evidence and any fair, reasonable inferences it yields." People v. Glasper, 234 Ill. 2d 173, 204, 917 N.E.2d 401, 419 (2009). A reviewing court "will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." People v. Runge, 234 Ill. 2d 68, 142, 917 N.E.2d 940, 982 (2009). "Error is cured by sustaining an objection, admonishments[,] and jury instructions." People v. Alksnis, 291 Ill. App. 3d 347, 358, 682 N.E.2d 1112, 1120 (1997).

Defendant argues the prosecutor improperly commented on defendant's decision not to testify when he said Strandberg was "the only witness [the jury] heard from today that was actually there" at the time of the field-sobriety tests. "A criminal defendant has a fifth[-]amendment right not to testify as a witness in his or her own behalf, and the prosecutor is forbidden to make direct or indirect comment on the exercise of that right." People v. Bannister, 232 Ill. 2d 52, 88, 902 N.E.2d 571, 593 (2008); U.S. Const., amend. V. To determine whether a comment improperly highlights defendant's decision not to testify, courts look at "whether the reference was intended or calculated to direct the jury's attention to the defendant's neglect to avail himself of his legal right to testify." Bannister, 232 Ill. 2d at 88, 902 N.E.2d at 594.

In looking at the entire arguments, the prosecutor's

statements regarding Strandberg being the only testifying witness who observed the field-sobriety tests did not seek to direct the jury's attention to defendant's decision not to testify. Strandberg was the State's sole witness in its case in chief, and Henson was the only witness for the defense. The prosecutor's remarks sought to highlight that Strandberg was the only one who observed defendant firsthand after the stop as Henson was not present. We find no error.

Defendant argues the prosecutor improperly argued defendant could "clearly hold his liquor," which explained why there might have been a "disconnect" with his physical actions during the stop and his blood-alcohol level. However, a prosecutor may comment on any inferences the evidence yields. Runge, 234 Ill. 2d at 142, 917 N.E.2d at 982. Moreover, jurors are often instructed that they are to consider the evidence in light of their own observations and experiences. See People v. Hopp, 209 Ill. 2d 1, 17, 805 N.E.2d 1190, 1200 (2004), citing Illinois Pattern Jury Instructions, Criminal, No. 1.01[10] (4th ed. 2000). The statement here was a legitimate comment on the evidence and a matter of common knowledge such that the jurors could utilize their experiences in life to decide whether defendant was guilty of the offenses. We find no error.

Defendant also argues the prosecutor attacked Dr. Henson on rebuttal by calling him a "peacock" and a "hired gun."

Defense counsel objected to the "peacock" characterization, and the trial court overruled the objection finding it a comment on demeanor. We find no error. See People v. Nitz, 143 Ill. 2d 82, 120, 572 N.E.2d 895, 912 (1991) (finding it "a fair comment on the evidence to argue that a witness is believable because of [his] demeanor while testifying").

During his rebuttal argument, the prosecutor noted the pay Dr. Henson received for his expert testimony and referred to him as a "hired gun." While the prosecutor's comment was error (see People v. Johnson, 208 Ill. 2d 53, 110, 803 N.E.2d 405, 438 (2003) (noting it was "error to refer to defense counsel as a 'hired gun'")), the trial court ordered the comment stricken and instructed the jury that it should not be considered in arriving at a verdict. Moreover, the court instructed the jury that closing arguments are not evidence and arguments not based on evidence were to be disregarded. Accordingly, the court sufficiently cured the error.

Defendant sets forth other comments or questions that were either not objected to at trial or were sustained and stricken by the trial court. We find he was not denied a fair trial.

### E. Jury Instruction

Defendant argues the trial court erred by giving Illinois Pattern Jury Instructions, Criminal, No. 23.30 (4th ed.

2000) (hereinafter IPI Criminal 4th). We disagree.

The instruction at issue states, in part, as follows:

"If you find that at the time the defendant drove a vehicle that the amount of alcohol concentration in the defendant's blood or breath was 0.08 or more, you may presume that the defendant was under the influence of alcohol. You never are required to make this presumption. It is for the jury to determine whether the presumption should be drawn. You should consider all of the evidence in determining whether the defendant was under the influence of alcohol. This presumption, however, has no application to the offense of driving with an alcohol concentration of 0.08 or more. Therefore, you should not consider this presumption in your deliberation on the offense of driving with an alcohol concentration of 0.10 or more." IPI Criminal 4th No. 23.30.

Our supreme court has found the presumption did not violate a defendant's constitutional rights as it was a permissive presumption and not a mandatory one. See People v. Hester, 131 Ill. 2d 91, 101, 544 N.E.2d 797, 802 (1989).

The decision to give certain jury instructions rests with the trial court, and that decision will not be reversed on appeal absent an abuse of that discretion.  People v. Lovejoy, 235 Ill. 2d 97, 150, 919 N.E.2d 843, 872 (2009).  Defendant argues the trial court should not have given the instruction at issue here or, if it did, the jury should have been instructed that it was required to find "beyond a reasonable doubt" that defendant's BAC was 0.08 or more before it presumed he was under the influence of alcohol.

We find the instructions given to the jury, taken as a whole, properly instructed the jury on the State's burden of proof.  The instruction on driving under the influence required the State to prove defendant was under the influence beyond a reasonable doubt.  Thus, defendant has not shown the trial court erred in giving the permissive-presumption instruction.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.  As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH, P.J., and KNECHT, J., concur.