**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38786**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 23 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 25, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MICHAEL IAN KRAMER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge. Hon. Robert Burton, Magistrate.

Order of the district court on appeal from the magistrate upholding judgment of conviction, <u>affirmed</u>.

Phelps & Associates, Spokane, Washington, for appellant. Douglas D. Phelps argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

GRATTON, Chief Judge

Michael Ian Kramer was convicted by a jury of misdemeanor driving under the influence of alcohol, Idaho Code §§ 18-8004, 18-8005(4). On intermediate appeal, the district court affirmed his conviction. Kramer appeals to this Court contending that the magistrate erred by admitting documents that were disclosed the day before trial and that admission of the documents violated his Sixth Amendment right to confront witnesses against him. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Kramer was charged with misdemeanor DUI. On the day of trial, Kramer moved to exclude evidence of the breath test results and Intoxilyzer 5000 certificates, arguing that the State

1

failed to timely provide all evidence required of it under a discovery request.[1] Kramer asserted that the State did not disclose the certificates, which the State intended to use to lay a foundation for admission of the breath test itself, until the day before trial, in violation of Idaho Rules of Evidence 702, 703, and 704. Kramer also argued that the Confrontation Clause required the State to produce not just the certificates, but the live testimony of: (1) the individuals responsible for calibrating the breath testing equipment; (2) the forensic services commander who certified the forensic alcohol test; and (3) the person who prepared the simulator solution, in order for the breath test certificates to be admissible in evidence to lay a foundation for the breath test administered. The magistrate denied the motion. The jury returned guilty verdicts as to the charges of driving under the influence and transporting an open container of alcohol. Kramer appealed to the district court, and the district court affirmed. Kramer timely appeals the decision of the district court.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217.

---

[1] The "Intoxilyzer 5000 certificates" consist of multiple "certificates" produced by the State: (1) a certificate that the instrument is approved for alcohol testing as per I.C. § 18-8004(4) and ISP Rules and Regulations; (2) a certificate from the manufacturer certifying that the calibration of the instrument was tested and found to be in compliance with the applicable national standards; and (3) two certificates of analysis, certifying the target values and ranges of two different simulator solution lots. Also included was an instrument operations log showing the results of a series of tests for the instrument.

2

**A.      Disclosure of Intoxilyzer 5000 Certificates**

Whether to impose a sanction for a party's failure to comply with a discovery request, and the choice of an appropriate sanction, are within the discretion of the trial court. *State v. Buss*, 98 Idaho 173, 174, 560 P.2d 495, 496 (1977); *State v. Allen*, 145 Idaho 183, 185, 177 P.3d 397, 399 (Ct. App. 2008). When an issue of late disclosure of prosecution evidence is presented, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving a fair trial. *State v. Pacheco*, 134 Idaho 367, 370, 2 P.3d 752, 755 (2000); *Allen*, 145 Idaho at 186, 177 P.3d at 400; *State v. Johnson*, 132 Idaho 726, 728, 979 P.2d 128, 130 (Ct. App. 1999). The defendant bears the burden of establishing prejudice by showing that there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different. *Pacheco*, 134 Idaho at 370, 2 P.3d at 755. The magistrate here elected not to exclude the evidence or impose any sanction. Therefore, the question on appeal is whether Kramer was so prejudiced by the State's alleged discovery violation that the magistrate's refusal to exclude the evidence constituted an abuse of discretion. *See Allen*, 145 Idaho at 185, 177 P.3d at 399.

Kramer argues that due to the late disclosure of the Intoxilyzer 5000 certificates, he was unable to retain his own expert on the testing equipment, and thus the late disclosure hampered his ability to meet the evidence at trial. The State argues that Kramer's discovery request did not require production of the certificates and, additionally, Kramer failed to show a connection between any prejudice suffered and the timing of the disclosure of the certificates.

In *State v. Anderson*, 145 Idaho 99, 175 P.3d 788 (2008), the Idaho Supreme Court held that the magistrate did not abuse his discretion by failing to impose discovery sanctions on the State when it failed to disclose an expert witness's curriculum vitae as required by a pretrial discovery order. *Id.* at 105, 175 P.3d at 794. The Supreme Court noted there was no error in the magistrate's decision because the State was minimally culpable and Anderson suffered little to no prejudice as a result of the late disclosure. *Id.* The Court found it significant that: (1) Anderson received discovery responses close to a year before trial, but did not object to the omitted information until trial; (2) Anderson did not allege that he attempted but was unable to contact the expert witness prior to trial; and (3) the magistrate offered a lesser sanction, and Anderson refused, contending that the exclusion of the expert was the only appropriate means.

3

In the present case, the State's culpability to the extent the discovery request required production was also minimal. The State received the Intoxilyzer 5000 certificates the week of trial. Kramer's discovery request was made more than a year before the trial, but Kramer did not object to the State's failure to include the breath test certificates until the day of trial. At no point between the discovery request and trial did Kramer file a motion to compel, or take any independent steps to obtain the certificates directly from the Idaho State Police. Additionally, the document showing the breath test results was provided to defense counsel roughly one year prior to Kramer's objection. Defense counsel was aware that a breath test had been conducted.

Establishing prejudice ordinarily requires that the complaining party demonstrate that the late disclosure hampered his ability to meet the evidence at trial, had a deleterious effect on his trial strategy, or that it deprived him of the opportunity to raise a valid challenge to the admissibility of evidence. *Allen*, 145 Idaho at 186, 177 P.3d at 400. Kramer has provided no specifics as to how he may have been prejudiced by the late disclosure of the Intoxilyzer 5000 certificates. He claims only that he was hampered in his ability to challenge the admissibility and reliability of the breath test. If Kramer intended to challenge the breath test results by challenging the sufficiency of the underlying Intoxilyzer 5000 certifications, he could have demanded production well in advance of trial. If Kramer intended to call an expert to challenge the functioning of the Intoxilyzer 5000 or the accuracy of the test result, he could have done so without the certificates. If Kramer intended to challenge the admissibility of the certificates if they were offered at trial by the State on Sixth Amendment grounds, he was able to do so. Defense counsel argued that since the certificates had not been disclosed, he assumed the State did not plan to admit the breath test results. The magistrate properly rejected this contention, stating that Kramer could not genuinely claim surprise because "the very nature of the charge [of DUI] indicates a breath test." If Kramer chose not to pursue the certificates in order simply to object to the foundation for admittance of the breath test result, as opposed to truly challenging the accuracy of the result, he was not prejudiced in any ability to meet the evidence. Kramer has demonstrated no prejudice by any late disclosure.

## B.  Sixth Amendment Right to Confront Witnesses

"When considering alleged violations of constitutional rights, this Court defers to the district court's findings of fact unless clearly erroneous, but exercise[s] free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the

4

facts found." *State v. Thorngren*, 149 Idaho 729, 735, 240 P.3d 575, 581 (2010) (internal quotations omitted). Kramer contends that the admission of the Intoxilyzer 5000 certificates violated the Confrontation Clause of the Sixth Amendment. Specifically, Kramer argues he was denied the opportunity to question and cross-examine witnesses about the calibration of the testing instrument and the solution that was in it. The certificates, Kramer argues, were prepared in anticipation of trial and are testimonial; therefore, the district court committed reversible error by admitting the certificates in the place of live testimony. The State contends that Kramer's claim fails because the appellate record is incomplete,[2] and in the alternative, that the breath test certificates are not testimonial in nature and do not trigger the Confrontation Clause.

Kramer argues that because Intoxilyzer 5000 certificates are prepared in anticipation of trial they are testimonial, and therefore trigger the Confrontation Clause. This constitutional issue is one of first impression in Idaho.[3] The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. CONST. amend. VI (quoted in *Crawford v. Washington*, 541 U.S. 36, 42 (2004)). As a result, a witness's testimony is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 54; *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914 (2007). Not all evidence, however, implicates the Confrontation Clause. Rather, "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). Thus, the Idaho Supreme Court has stated that "the

---

[2]     The State first argues that Kramer's Confrontation Clause claim fails because the State's Exhibit 2, which contained the Intoxilyzer 5000 certificates, is not in the appellate record. However, copies of breath test certificates are included in the clerk's record as part of the State's "Supplemental Response to Discovery." The State acknowledges that the description of the contents of Exhibit 2 contained in the trial transcript is generally consistent with the contents of the State's supplemental response to discovery. Since the Confrontation Clause analysis is not particular to the certificates in Exhibit 2, but applies generally to the type of certificates at issue, we will address the Confrontation Clause claim.

[3]     The Idaho Supreme Court has held that the videotaped statements of a witness admitted in a sexual abuse trial are testimonial under *Crawford* and *Davis*, but has not yet applied the Confrontation Clause analysis to certificates regarding calibration of breath test devices. *See State v. Hooper*, 145 Idaho 139, 145, 176 P.3d 911, 917 (2007).

5

threshold question in a Confrontation Clause case is whether the statement is testimonial." *Hooper*, 145 Idaho at 143, 176 P.3d at 915. This Court employs a totality of the circumstances analysis to determine whether statements are testimonial in nature. *State v. Shackelford*, 150 Idaho 355, 373, 247 P.3d 582, 600 (2010).

In *Crawford*, the Supreme Court based its holding on the historical underpinnings of the Confrontation Clause, and noted that the Sixth Amendment must be interpreted with this history in mind: "[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." *Crawford*, 541 U.S. at 50. The Court defined "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51. The Court also listed three formulations of "core" testimonial statements:

> (1)     *ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;
> (2)     extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and
> (3)     statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-52.

Using the *Crawford* analysis, the Supreme Court has held that laboratory analysts' certificates, which "show[ed] the results of the forensic analysis performed on [] seized substances," were "testimonial." *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, ___, 129 S. Ct. 2527, 2531-32 (2009). The Court noted that the certificates admitted at trial were within the "core class of testimonial statements" outlined in *Crawford*. *Melendez-Diaz*, 557 U.S. at ____, 129 S. Ct. at 2532. Although denominated "certificates," the documents were quite plainly affidavits, sworn to before a notary public by the analysts at a Massachusetts State laboratory as required by state law. *Id.* at ____, 129 S. Ct. at 2531. As such, they were "incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving . . . that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine--the precise testimony the analysts would be expected to provide if called at trial." *Id.* at ____, 129 S. Ct. at 2532. Furthermore, under the relevant Massachusetts

law, the certificates' sole purpose was to provide prima facie evidence of the substance's composition, quality, and net weight. *Id.* Thus, the certificates were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id.* (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006) (emphasis removed)).

The Court also repudiated the argument that the certificates of analysis were admissible without implicating the Confrontation Clause because they were "akin to the types of official and business records admissible at common law." *Melendez-Diaz*, 557 U.S. at ____,129 S. Ct. at 2538. As noted above, it is the testimonial character of the evidence that triggers the Confrontation Clause. *See Davis*, 547 U.S. at 821. Thus, the Court drew a distinction between traditionally admissible business records and testimony within the scope of the Confrontation Clause. *See Melendez-Diaz*, 557 U.S. at ____,129 S. Ct. at 2539-40. The Court stated: "Business and public records are generally admissible absent confrontation . . . because--having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial." *Id.*

Although Kramer argues that the Intoxilyzer 5000 certificates are testimonial, all state appellate courts deciding the issue have found that such certificates are not.[4] The Massachusetts' case of *Commonwealth v. Zeininger*, 947 N.E.2d 1060 (Mass. 2011), is illustrative of the reasoning generally adopted by state courts. There, the Supreme Judicial Court of Massachusetts initially noted that the certificate of analysis admitted in *Melendez-Diaz* was direct proof of an element of the crime in that case--composition of a substance. *Zeininger*, 947 N.E.2d at 1069. Calibration certificates, on the other hand, "bear only on the admissibility or credibility" of breath test evidence. *Id.* The Court stated: "The OAT certification records are offered, first, as proof that the Commonwealth has met a foundational predicate to admissibility of the

---

[4]    *See, e.g.*, *United States v. Forstell*, 656 F. Supp. 2d 578, 580-82 (E.D. Va. 2009) (certificates of accuracy for speed radar device, tuning fork, and Intoxilyzer held nontestimonial); *Ramirez v. State*, 928 N.E.2d 214, 220 (Ind. 2010) (certificates verifying routine inspection of breath test instruments held nontestimonial); *State v. Bergin*, 217 P.3d 1087, 1089-90 (Or. Ct. App. 2009) (concluding that *Melendez-Diaz* does not overrule prior Oregon case law finding Intoxilyzer certificates nontestimonial); *People v. Pealer*, 933 N.Y.S.2d 473 (A.D.4th 2011) (breath test documents are "not accusatory" in the sense of establishing an element of the crime, but only establish proper functioning of equipment); *Commonwealth v. Dyarman*, 33 A.3d 104 (Pa. Super. Ct. 2011) (calibration logs establish accuracy of device, but are not created in anticipation of particular litigation or for proof of an element of a crime).

breathalyzer test results and, then, either through direct testimony or by implication, as evidence bolstering the reliability of those results." *Id.* As such, the Court acknowledged that calibration records "bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)." *Id.* at 787, 947 N.E.2d at 1069 (quoting *State v. Bergin*, 217 P.3d 1087, 1089 (Or. Ct. App. 2009)). The Supreme Court noted the same attenuation in *Melendez-Diaz,* stating: "Contrary to the dissent's suggestion . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. . . . [D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Melendez-Diaz*, 557 U.S. at ____ n.1, 129 S. Ct. at 2532 n.1.

The Massachusetts Court also reasoned that the calibration records were created "'for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial,' the distinction the Supreme Court forged between business records traditionally admissible absent confrontation and testimonial records subject to confrontation." *Zeininger*, 947 N.E.2d at 1069 (quoting *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2539–2540). The Court explained:

> The primary purpose of OAT certification is to guarantee, internally, as a matter of course, and when necessary, in court, the accuracy and standardization of all breathalyzer testing equipment across the various police departments of the Commonwealth. At the time of certification, the hypothetical use of that record in an as-yet-unknown criminal proceeding is merely an ancillary purpose, subordinate in importance to the "administration of the entity's affairs." [*Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2539.]
>
> In comparison to a chemist who authors certificates of drug analysis, a technician certifying a breathalyzer machine has no "particular prosecutorial use in mind." [*Bergin*, 217 P.3d at 1089.] The certificate of analysis is particularized and performed in aid of a prosecution seeking to prove the commission of a past act and, thus, resembles the type of "ex parte in-court testimony or its functional equivalent" at the nucleus of the confrontation clause. [*Crawford*, 541 U.S. at 51, 52.] That the OAT certification records are generalized and performed prospectively in primary aid of the administration of a regulatory program makes all the difference. [*See Crawford*, 541 U.S. at 51-52; *see also Bergin*, 217 P.3d at 1089.]

*Zeininger*, 947 N.E.2d at 1070. The Court thus concluded that calibration certificates were "outside the orbit of the 'common nucleus' of the various definitions of 'testimonial' set forth in *Crawford*." *Id.* at 1069.

Kramer argues that the Intoxilyzer 5000 certificates are prepared in anticipation of trial and, as such, are testimonial. He cites the recent Supreme Court case of *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S. Ct. 2705 (2011) in support of his argument, but the case is distinguishable. In *Bullcoming*, the Court held that a lab technician's report in a DUI case, one that certified Bullcoming's blood alcohol concentration, was testimonial. *See id*. at ___, 131 S. Ct. at 2710. As in *Melendez-Diaz*, however, the report admitted direct evidence of an element of the crime. The Court noted that the report was "created solely for an evidentiary purpose" and was also "made in aid of a police investigation." *Bullcoming*, 564 U.S. at ___, 131 S. Ct. at 2717 (internal quotations omitted). Furthermore, although the report was unsworn, the Court recognized that "the absence of an oath is not dispositive in determining if a statement is testimonial." *Id.* (internal quotations and ellipses omitted). The Court concluded that "the formalities attending the 'report of blood alcohol analysis' are more than adequate to qualify [the analyst's] assertions as testimonial." *Id.*

Unlike the reports in *Melendez-Diaz* and *Bullcoming*, the Intoxilyzer 5000 certificates admitted over Kramer's objection in this case were not direct proof of an element of the crime of driving under the influence. The certificates admitted regarding the calibration of the testing instrument were not offered to prove that Kramer's BAC was above the legal limit; rather, the certificates were admitted as proof that the testing instrument was working properly. Just as in *Zeininger*, the certificates here "support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)." *Zeininger*, 947 N.E.2d at 1069.

Kramer asserts that I.C. § 18-8004(4) requires that the State introduce into evidence the Intoxilyzer 5000 certificates as an element of proof. We disagree. Idaho Code § 18-8004(4) sets the formula for evidentiary testing and requires that evidentiary testing be performed in an approved laboratory. That section does not require that the certificates, including solution documentation, be admitted in order to obtain a conviction. Moreover, I.C. § 18-8004(4) expressly provides that "records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho state police or by any other method

9

approved by the Idaho state police shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination." While the section provides how the certificates may be admitted into evidence, it does not require that the certificates be admitted in order to establish an element of proof of the crime charged.

Furthermore, the certification standards for breath test instruments in Idaho are not tied to the prosecution of any particular person. *See* Idaho State Police, 6.0 Standard Operating Procedure Breath Alcohol Testing (Rev. 2010). Idaho regulations provide that "[e]ach breath testing instrument shall be checked on a schedule established by the [Idaho State Police] for accuracy with a simulator solution provided by or approved by the department." Idaho Admin. Code 11.03.01.014. ISP's standard operating procedures, in turn, provide that each testing instrument is to be calibrated and certified before it is approved for use in the field. After the initial calibration, the frequency of performance checks varies between different instruments, but generally the checks occur at least once per month. *See* Idaho State Police, 6.0 Standard Operating Procedure: Breath Alcohol Testing, pp. 7, 10-12 (Rev. 2010).

ISP's standard operating procedures also dictate that additional checks to ensure the accuracy of the instrument occur at the time of, or within twenty-four hours of, an evidentiary breath test. These "performance verifications" are recorded in instrument logs, and were apparently admitted in this case along with the calibration and simulator solution certificates. Although Kramer does not explicitly include the instrument logs in his argument, referring to "breath test certificates" generally, performance verifications and the instrument logs are arguably more particularized to a specific "prosecutorial use" than the certificates in *Zeininger*. The "performance verification" may be more likely used as evidence in a particular DUI case to show that the instrument was functioning properly at the time of the test. Nevertheless, at least one court thus far has found that even officer testimony and instrument logs admitted to prove proper functioning of a breath testing instrument were not testimonial. *See People v. Jacobs*, 405 Ill. App. 3d 210, 217 (2010) (relying on *Bergin*, 217 P.3d 1087). Although the performance verifications may be more temporally related to an individual breath test, again, as in *Zeininger*, the performance verifications "support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)." *Zeininger*, 947 N.E.2d at 1069.

Ultimately, Kramer only asserts generally that there were issues dealing with "the calibration of the machine and what simulator solution was installed in the machine." The connection between the calibration and simulator solution certificates and the ultimate issue of Kramer's BAC is the same as in *Zeininger*. This is especially true considering that subsequent calibrations, similar to the one performed prior to an instrument's initial certification, are only completed after an instrument has failed three performance verifications. *See* Breath Alcohol SOP, p. 11; *see also Ramirez v. State*, 928 N.E.2d 214, 219 (Ind. 2010) ("[W]hile the [breath test inspection] certificates contemplate use in criminal trials, they are completed in advance of any specific alleged drunk-driving incident and breath test administration and are not created for the prosecution of any particular defendant."). Given that certificates of calibration and those certifying simulator solutions are created prior to any particular incident and are not created in order to prosecute a particular person, the primary purpose of Intoxilyzer 5000 certificates "is to guarantee, internally, as a matter of course, and when necessary, in court, the accuracy and standardization of all breathalyzer testing equipment across the various police departments . . . ." *Zeininger*, 947 N.E.2d at 1070. Indeed, "the hypothetical use of that record in an as-yet-unknown criminal proceeding is merely an ancillary purpose, subordinate in importance to the 'administration of the entity's affairs.'" *Id.* (quoting *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2539). Therefore, the Intoxilyzer 5000 certificates admitted in Kramer's case are not testimonial, and, as such, their admission does not implicate the Confrontation Clause.

### III.
### CONCLUSION

Kramer has failed to demonstrate that the magistrate abused its discretion by failing to exclude the Intoxilyzer 5000 certificates due to late disclosure. The Intoxilyzer 5000 certificates admitted into evidence are not testimonial and, therefore, do not implicate the Confrontation Clause. Therefore, the district court's intermediate appellate decision upholding Kramer's judgment of conviction is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**