No. 97,905

STATE OF KANSAS, *Appellee*, v. DANIEL A. BENSON, *Appellant*.

(287 P.3d 927)

Opinion filed November 9, 2012.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie A. Chalmers*, assistant district attorney, argued the cause, and *Jamie L. Karasek*, assistant district attorney, *Robert D. Hecht*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Daniel A. Benson seeks review of the Court of Appeals' decision affirming his conviction and sentence for felony DUI. Benson's primary argument is that the district court violated his right of confrontation under the Sixth Amendment to the

United States Constitution by admitting into evidence the certificate of calibration for the Intoxilyzer 5000 machine used to determine the level of alcohol in Benson's breath. Benson contends that the Confrontation Clause required that the person who completed the certificate had to testify in person at Benson's trial. Because we conclude that the certificate of calibration is not testimonial in nature, its admission did not offend the holding in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In a second issue, Benson challenges the use of his criminal history to enhance his sentence, albeit he concedes that his argument is controlled by *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Accordingly, the Court of Appeals correctly affirmed Benson's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

Benson was arrested for felony DUI after failing sobriety tests administered by the Shawnee County Sheriff's Department during a routine DUI check lane on July 18, 2004. After his arrest, Benson took an Intoxilyzer 5000 test that registered his blood alcohol concentration at .087—above the legal limit of .08. Because it was his third offense, Benson was charged with felony DUI.

Before trial, Benson attempted to have the breath-test results excluded, in part by claiming error in the admission of the certificate of calibration indicating that the Intoxilyzer 5000 was in proper working order. Benson contended that in order to comply with the Confrontation Clause requirements of *Crawford*, the employee who conducted the calibration should have testified in person. In denying that motion, the district court examined the nature of the document and concluded that the certificate of calibration was not testimonial and therefore not subject to *Crawford*'s Confrontation Clause requirements.

The Court of Appeals panel affirmed the district court's findings based on its understanding of testimonial evidence as explained in *Crawford* and in reliance on the numerous other jurisdictions reaching similar conclusions. *State v. Benson*, No. 97,905, unpublished opinion filed September 26, 2008, slip op. at 4-5. Specifically, the panel noted that the calibration certificate was "prepared

as a routine administrative matter required by the State and [wa]s not prepared in anticipation of any particular criminal proceeding." Additionally, in reliance on *Ivory*, the panel quickly dispensed with Benson's claim that his increased sentence was constitutionally infirm.

Benson raises the same two arguments in his petition for review. After holding the petition pending a decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), we granted review.

### CONFRONTATION CLAUSE

As noted, Benson's first issue requires us to determine whether the certificate of calibration for the breathalyzer machine is testimonial in nature.

*Standard of Review*

"We employ an unlimited standard of review when addressing issues pertaining to the Confrontation Clause of the Sixth Amendment to the United States Constitution." *State v. Leshay*, 289 Kan. 546, 547, 213 P.3d 1071 (2009) (citing *State v. Noah*, 284 Kan. 608, 612, 162 P.3d 799 [2007]); *State v. Ransom*, 288 Kan. 697, 708-09, 207 P.3d 208 (2009) (whether confrontation rights have been violated is a question of law subject to unlimited review).

*Analysis*

In *Crawford*, our Supreme Court held that certain out-of-court statements are inadmissible at trial unless the State proves that the person making the statement is unavailable and that the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. The *Crawford* Court explained that the admission of a hearsay statement implicates a defendant's rights under the Sixth Amendment's Confrontation Clause only when the statement is deemed to be testimonial. 541 U.S. at 68; see also *State v. Miller*, 284 Kan. 682, 711-12, 163 P.3d 267 (2007) (citing *State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 [modified opinion filed March 23, 2007]). Accordingly, Benson's right of confrontation argument hinges upon whether the certificate of calibration constitutes a testimonial statement.

*Crawford* stopped short of specifically defining testimonial statements, but the opinion did identify the type of statements that could qualify:

"Various formulations of this core class of 'testimonial' statements exist: *'ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' . . . 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation omitted]; 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' [citation omitted]." 541 U.S. at 51-52.

*Crawford's* failure to flesh out the definition of testimonial led to our attempt at synthesizing a list of factors from various post-*Crawford* cases to aid in the determination:

"(1) Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime?

"(2) Was the statement made to a law enforcement officer or to another government official?

"(3) Was proof of facts potentially relevant to a later prosecution of a crime the primary purpose of the interview when viewed from an objective totality of the circumstances, including circumstances of whether

(a) the declarant was speaking about events as they were actually happening, instead of describing past events;

(b) the statement was made while the declarant was in immediate danger, *i.e.*, during an ongoing emergency;

(c) the statement was made in order to resolve an emergency or simply to learn what had happened in the past; and

(d) the interview was part of a governmental investigation?; and

"(4) Was the level of formality of the statement sufficient to make it inherently testimonial; *e.g.*, was the statement made in response to questions, was the statement recorded, was the declarant removed from third parties, or was the interview conducted in a formal setting such as in a governmental building?" *State v. Brown*, 285 Kan. 261, 291, 173 P.3d 612 (2007).

Later, *Melendez-Diaz* held that the sworn statements of laboratory analysts made in contemplation of litigation were testimonial statements and, thus, subject to *Crawford's* confrontation requirements. 557 U.S. at 308-11; see also *State v. Laturner*, 289 Kan. 727, 733-34, 750-51, 218 P.3d 23 (2009) (relying on *Melendez-Diaz* in finding a Kansas statute unconstitutional where it authorized the

admission of a sworn forensic lab report in lieu of the preparer's in-court testimony). Even more recently, in *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 2717, 180 L. Ed. 2d 610 (2011), the Supreme Court determined that a forensic laboratory report certifying the defendant's blood-alcohol concentration was, like the report in *Melendez-Diaz*, testimonial in nature. *Bullcoming* found it significant that while the analyst who prepared the report may not have had to exercise any independent judgment in creating it, the certification he signed included more than the "raw, machine-produced data" regarding Bullcoming's blood alcohol level, such as the specific protocols followed by the analyst and information regarding the chain of custody. 131 S. Ct. at 2714. The Court suggested that it was those additional "representations, relating to past events and human actions" as to which cross-examination was most indicated. 131 S. Ct. at 2714.

In the present case, Benson reasons that the certificate of calibration is a testimonial statement because it was created in contemplation of trial, notwithstanding that the certificate was generated by an independent agency after it completed repairs on the machine some 3 weeks before it was used to test Benson. While this court has not previously addressed Benson's argument, the Court of Appeals has ruled on the question in two other cases since *Crawford* and *Brown*. In those cases, the Court of Appeals held that documents showing the certification or calibration of a breath-test machine are not testimonial statements because they do not address a *specific* trial and do not tend to prove a specific element of a particular crime. *State v. Johnson*, 43 Kan. App. 2d 815, 826, 233 P.3d 290 (2010); *State v. Dukes*, 38 Kan. App. 2d 958, 962, 174 P.3d 914 (2008), *aff'd* 290 Kan. 485, 231 P.3d 558 (2010) (affirming the Court of Appeals' opinion on other grounds but not addressing the panel's analysis declaring the certificate testimonial because the issue was not properly preserved).

*Dukes* placed significant reliance on the fact that 14 other jurisdictions had determined that proof of a breath-test machine's calibration was not testimonial evidence. 38 Kan. App. 2d at 961. However, those decisions, like *Dukes*, were issued before *Melendez-Diaz*—an argument raised in *Johnson*. But the *Johnson* panel

distinguished *Melendez-Diaz* because the certificate it was reviewing only contained information related to the operation of the machine; it did not deal with a specific element of the crime. *Johnson*, 43 Kan. App. 2d at 826; see also *Melendez-Diaz*, 129 S. Ct. at 2531 (certificates at issue reported that the tested substance was in fact cocaine). Moreover, the *Melendez-Diaz* majority specifically limited its holding in a footnote:

"Contrary to the dissent's suggestion, . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the . . . accuracy of the testing device, must appear in person as part of the prosecution's case. . . . [D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." 129 S. Ct. at 2532 n.1.

The same distinction has been cited by other jurisdictions addressing this issue after *Melendez-Diaz*, and most jurisdictions uniformly agree that documents certifying maintenance records of breath-test machines are not testimonial in nature. See, *e.g.*, *United States v. Forstell*, 656 F. Supp. 2d 578, 580-82 (E.D. Va. 2009); *State v. Lindner*, 227 Ariz. 69, 71-72, 252 P.3d 1033 (Ct. App. 2010); *Jacobson v. State*, 306 Ga. App. 815, 817-18, 703 S.E.2d 376 (2010); *People v. Jacobs*, 405 Ill. App. 3d 210, 216-17, 939 N.E.2d 64 (2010); *Ramirez v. State*, 928 N.E.2d 214, 219-20 (Ind. App. 2010); *Commonwealth v. Zeininger*, 459 Mass. 775, 788-89, 947 N.E.2d 1060 (2011). The most common rationale for these holdings is that the certificate of calibration is not created for the purpose of prosecuting any particular defendant, but rather it is designed for use in criminal prosecutions generally. See *Melendez-Diaz*, 129 S. Ct. at 2539-40 (explaining that the reason business records are nontestimonial and thus proper hearsay exceptions is because the documents are created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at a specific trial); *Dukes*, 38 Kan. App. 2d at 961-62. As the Massachusetts Supreme Judicial Court recently stated:

"[C]ertification records are outside the orbit of the 'common nucleus' of the various definitions of 'testimonial' set forth in *Crawford* . . . . [Citations omitted.] Whereas certificates of drug analysis were offered as direct proof of an element of the offense charged, [as in *MelendezDiaz*,] the [] certification records bear only on the admissibility or credibility of the evidence. The [] certification records are

offered, first, as proof that the Commonwealth has met a foundational predicate to admissibility of the breathalyzer test results and, then, either through direct testimony or by implication, as evidence bolstering the reliability of those results. [Citations omitted.] We agree with the Court of Appeals of Oregon, which concluded that such records 'bear a more attenuated relationship to conviction: They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level).' *State v. Bergin*, [231 Or. App. 36,] 41[, 217 P.3d 1087 (2009)].

. . . .

". . . That the [] certification records are generalized and performed prospectively in primary aid of the administration of a regulatory program makes all the difference." *Zeininger*, 459 Mass. at 786-88.

As noted above, *Bullcoming* intimated the same reasoning when the majority opinion alluded to the possibility that a report containing only "raw, machine-produced data" might not be considered a testimonial statement. *Bullcoming*, 131 S. Ct. at 2714 (noting that it was the analyst's sworn "representations, relating to past events and human actions" that justified the certificate's testimonial status). While it could be argued that under the test in *Brown* the certificate in the present case is testimonial because the only reason for calibrating the machine was to assure the reliability of information specifically used at trial, the report was not generated in contemplation of Benson's specific criminal proceeding—a fact required by other courts addressing this issue before finding a certificate to be testimonial. See, *e.g.*, *Zeininger*, 459 Mass. at 786-87; *Dukes*, 38 Kan. App. 2d at 961-62. Rather, when the certificate was created, its primary purpose was to establish that the machine was in compliance with administrative regulations in effect at the time. See K.A.R. 28-32-1 (revoked March 14, 2008). Thus, the certificate served a purpose at the time it was created, regardless of whether there ever would be a prosecution in the future at which it would be utilized.

In summary, the certificate of calibration in this case was routinely generated as part of the regular equipment maintenance. It was not created to establish a specific element in the prosecution of Benson's case. Further, the certificate speaks only to the reliability of the evidence that Benson's blood alcohol level was above the legal limit, it does not prove or disprove that element. Conse-

quently, we hold that the certificate of calibration is not a testimonial statement and is not subject to the Confrontation Clause requirements of *Crawford*. The district court did not violate Benson's Sixth Amendment rights by admitting the certificate.

## SENTENCING

Benson argues that the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by imposing an enhanced sentence, based on prior convictions, without proving those convictions to the jury beyond a reasonable doubt. This court has consistently rejected this argument. See, *e.g.*, *State v. Bennington*, 293 Kan. 503, Syl. ¶ 9, 264 P.3d 440 (2011); *State v. Riojas*, 288 Kan. 379, 388, 204 P.3d 578 (2009); *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008); *Ivory*, 273 Kan. at 46-48.

*Standard of Review*

"To the extent our decision involves . . . the interpretation and application of . . . court precedent, we are resolving questions of law and, thus, exercising unlimited review." *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012); accord *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213, 135 P.3d 1203 (2006).

*Analysis*

In *Ivory*, this court found that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), did not prohibit basing the length of a sentence in part upon a defendant's criminal history score under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.* 273 Kan. at 44. Benson fails to propound any argument that would persuade us to revisit that holding. Accordingly, we affirm the Court of Appeals on this issue as well.

Affirmed.