NOT DESIGNATED FOR PUBLICATION

No. 116,141

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL ANTONIO HARRIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL RIOS, judge. Opinion filed October 27, 2017. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

PER CURIAM: Michael Antonio Harris appeals from his conviction and sentence after a jury found him guilty of aggravated battery. Harris contends on appeal that there was insufficient evidence to support his conviction. Viewing the evidence in the light most favorable to the State, we conclude that the State produced sufficient evidence upon which a jury could have found him guilty of aggravated battery beyond a reasonable doubt. We also reject Harris' argument that the district court violated his constitutional rights in determining his criminal history score at sentencing. Thus, we affirm Harris' conviction and sentence.

1

In May of 2013, Harris was incarcerated in the Shawnee County Jail. On May 19, 2013, another inmate—Richard Smith—was sitting at a table in a common area of the jail playing dominoes and looking at a newspaper with other inmates. Harris came down the stairs and walked past Smith. According to Corrections Officer Brandon Hollingsworth, Smith said that he was tired of people taking the ads out of the newspaper. Harris replied that he was not the one who had taken them.

Harris turned around, walked up to Smith, switched a cup he was carrying to his left hand, closed his right fist, and punched Smith in the head. Officer Hollingsworth would later testify that Harris approached Smith from the back. As a result, Smith did not see him coming toward him. Smith fell off of his seat to the side and hit the floor. Officer Hollingsworth noted that Smith was "extremely dazed" and stayed down on the ground for around 5 to 10 minutes. However, Smith rejected help from the nursing staff who arrived to assist him.

Smith returned to his cell but could not remember being punched. He also did not recognize a photograph of his girlfriend in his cell or remember that some pizza in the cell belonged to him. Approximately half an hour after Smith returned to his cell, Officer Hollingsworth decided to have him taken to the medical unit because he was still disoriented. Smith was taken by wheelchair to the medical unit and was ultimately sent to the emergency room. He remained in the hospital for several hours for testing. However, x-rays revealed that Smith did not have any broken bones.

Smith returned to jail later that day, but he remained disoriented for several days and stayed in the medical unit for four or five days because he remained groggy. After being released from the medical unit, medical personnel checked him every morning and afternoon for several more days to make sure he was recovering from his injuries. As a

result of being punched in the head, Smith reported seeing black spots in his vision, having memory problems, and having weakness in the legs.

On July 29, 2013, the State charged Harris with one count of aggravated battery. For various reasons not material to the issue presented in this case, the jury trial was not held until March 8, 2016. At the trial, Officer Hollingsworth testified about witnessing Smith being punched by Harris. In addition, the State played a videorecording from the jail's surveillance cameras that showed Harris punching Smith. On cross-examination, Officer Hollingsworth acknowledged that his report on the incident listed Harris' actions as a battery and not as an aggravated battery. On redirect-examination, however, the officer testified that he understood battery to mean that someone hit another person and that he was unfamiliar with the different levels of battery.

The State next presented the testimony of Smith. He testified regarding his limited memory of the incident and the effects it had on him. In particular, Smith testified that, since being punched in the head, he occasionally sees black spots in his vision and he has memory problems. In addition, another corrections officer testified about seeing Smith in the medical unit following the incident. The officer observed that Smith "seemed confused and dazed and just generally didn't understand what was happening or going on."

The State's final witness was Corrections Officer Nathan Volwinckel, who worked in the medical unit at the Shawnee County Jail. Officer Volwinckel testified that he took Smith from his cell to the medical unit by wheelchair. He also testified that he had seen Smith shortly after he was punched and that his condition appeared to be worse than when he previously saw him. The officer further testified that Smith was able to talk while being taken to the medical unit but that he did not remember anything about the incident. Once he arrived at the medical unit, Smith spoke to a nurse and, when she stepped away, Smith slipped out of his wheelchair onto the floor. At that point, Officer

3

Volwinckel called in a medical emergency. An ambulance arrived within 5 to 10 minutes to transport Smith to the hospital.

After the State rested, the district court denied Harris' motion for a directed verdict. Harris exercised his right not to testify and presented no witnesses or other evidence in his defense. The district court instructed the jury on aggravated battery as well as on the lesser included offense of battery. Ultimately, the jury returned a verdict finding Harris guilty of aggravated battery. On April 15, 2016, the district court sentenced Harris to 32 months of imprisonment pursuant to the Kansas Sentencing Guidelines.

ANALYSIS

*Sufficiency of Evidence*

On appeal, Harris contends that the State failed to present sufficient evidence at trial to support his aggravated battery conviction. To convict a defendant of a crime, the prosecution must prove each element of the crime beyond a reasonable doubt. *State v. Brown*, 303 Kan. 995, 1001, 368 P.3d 1101 (2016). In reviewing on appeal the sufficiency of the evidence supporting a conviction, we are required to review the evidence in a light most favorable to the prosecution to determine whether it is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Belt*, 305 Kan. 381, 397, 381 P.3d 473 (2016). We are not to reweigh the evidence, resolve conflicts in the evidence, or determine the credibility of witnesses. 305 Kan. at 397.

Here, Harris was convicted of violating K.S.A. 2012 Supp. 21-5413(b)(1)(B), which states that aggravated battery is "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or

4

death can be inflicted." The term "knowingly" means that a defendant is aware of his or her conduct and is reasonably certain that he or she will cause the result. K.S.A. 2016 Supp. 21-5202(i). Furthermore, "great bodily harm" is defined as being more than the slight, trivial, minor, or moderate harm—such as bruising—that is likely to be sustained by simple battery. *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241 (2006).

Consistent with the language of K.S.A. 2012 Supp. 21-5413(b)(1)(B), the district court instructed the jury as follows:

"The defendant is charged in Count 1 with aggravated battery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant knowingly caused bodily harm to Richard Wayne Smith in any manner whereby great bodily harm, disfigurement or death can be inflicted.

"2. This act occurred on or about the 19th day of May, 2013, in Shawnee County, Kansas."

Although Harris does not deny intentionally hitting Smith, he contends that the State failed to prove that he knowingly did so in a manner whereby great bodily harm, disfigurement, or death could be inflicted. Specifically, Harris argues that the State failed to establish that he knew that one punch could cause great bodily harm to Smith. In response, the State contends that the evidence presented at trial was sufficient for the jury to conclude beyond a reasonable doubt that Harris knowingly punched Smith in the face or head in a manner in which great bodily harm, disfigurement, or death can be inflicted.

Pursuant to K.S.A. 2012 Supp. 21-5413(b)(1)(B), the State was first required to establish that Harris knowingly caused bodily harm to Smith. This was done by offering the testimony of a witness who observed the incident, by showing the jury the videotape

5

of the incident, and by presenting evidence regarding the nature and extent of the injuries suffered by Smith as a result of the incident. Moreover, it does not appear that Harris challenges the fact that he caused at least some bodily harm to Smith.

Next, K.S.A. 2012 Supp. 21-5413(b)(1)(B) required the State to establish that Harris knowingly hit Smith in a "manner whereby great bodily harm, disfigurement or death can be inflicted." It is important to note that the State—in order to prove this element—was not required to establish that Smith actually suffered great bodily harm, nor was it required to show that Harris intended precise harm. See *State v. Hobbs*, 301 Kan. 203, 212, 340 P.3d 1179 (2015) (finding that the State need only prove that the defendant punched the victim knowing that some type of great bodily harm or disfigurement was reasonably certain to result). Ultimately, whether a defendant's actions can cause great bodily harm is a question for the jury. *State v. Curreri*, 42 Kan. App. 2d 460, 465-66, 213 P.3d 1084 (2009); see also *State v. Morton*, 38 Kan. App. 2d 967, 972-73, 174 P.3d 904 (2008) (finding that whether biting an individual could inflict great bodily harm or disfigurement was a question for the jury).

Based on our review of the record in the light most favorable to the State, as we are required to do, we find that there was sufficient evidence presented by the State upon which a jury could conclude beyond a reasonable doubt that Harris knowingly hit Smith in a manner that could inflict great bodily harm, disfigurement, or death. In particular, the State presented evidence that:

- Harris hit Smith from behind without warning,
- Smith had no opportunity to defend himself,
- Harris targeted Smith's head,
- Harris punched Smith with such force as to cause him to be knocked off his seat and fall to the floor,

6

- Smith was disoriented—if not unconscious—immediately after being hit and that Smith remained on the floor for several minutes,

- Smith had difficulty with his memory and ability to walk after returning to his cell,

- Smith required medical attention at the jail and in the emergency room,

- Smith continued to be disoriented for several days after the incident,

- Smith stayed in the medical unit at the jail for four or five days for observation because he remained groggy,

- Smith continued to be checked by medical personnel at the jail every morning and afternoon for several more days after he was released from the medical unit, and

- Smith reported seeing black spots in his vision, having memory problems, and having weakness in the legs as a result of being punched in the head.

We also find it significant that the district court appropriately instructed the jury on the lesser included offense of simple battery. After weighing all of the evidence presented, the jury determined that Harris' actions rose to the level of aggravated battery rather than simple battery. Based on our review of the evidence—and the reasonable inferences that could be reached based on such evidence—in the light most favorable to the State, we are convinced that a rational fact-finder could have found Harris guilty of aggravated battery beyond a reasonable doubt. Accordingly, we will not replace our judgment for that of the jury.

*Criminal History Score*

Harris also contends that the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Specifically, Harris argues that by using his prior convictions to increase his sentence without requiring the

State to prove them beyond a reasonable doubt is unconstitutional. However, he acknowledges that the Kansas Supreme Court has previously resolved this issue contrary to his position, but he states that he is arguing it to preserve it for federal review. See *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002).

We are duty bound to follow precedent established by our Supreme Court unless there is an indication that it is departing from the precedent. *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). Moreover, we have no reason to believe that our Supreme Court is departing from its holding in *Ivory*. See *State v. Williams*, 306 Kan. 175, 176, 392 P.3d 1267 (2017); *State v. Benson*, 295 Kan. 1061, 1068, 287 P.3d 927 (2012); *State v. Bennington*, 293 Kan. 503, Syl. ¶ 9, 264 P.3d 440 (2011); *State v. Riojas*, 288 Kan. 379, 388, 204 P.3d 578 (2009); *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008). Thus, we conclude that the district court appropriately considered Harris' prior criminal history in imposing his sentence in this case.

Affirmed.