2022 IL App (4th) 220159-U

NOS. 4-22-0159, 4-22-0160, 4-22-0161, 4-22-0162 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 21, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.O., C.O., L.O., and B.O., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos.  19JA88 |
| v. | ) | 19JA89 |
| Brooke M., | ) | 19JA90 |
| Respondent-Appellant). | ) | 20JA66 |
| | ) | |
| | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not err in terminating
respondent's parental rights.

¶ 2    The State filed petitions for adjudication of wardship concerning four minor

siblings: A.O. (born May 31, 2011), C.O. (born July 20, 2016), L.O. (born August 21, 2018), and

B.O. (born July 30, 2020). The minors were adjudicated neglected and subsequently made wards

of the court. Thereafter, the State filed a petition to terminate the parental rights of the minors'

mother, respondent Brooke M. The trial court found respondent to be unfit and further found it

was in the minors' best interests to terminate her parental rights. She appeals, claiming the court

erred by (1) finding her unfit, (2) finding termination of her parental rights was in the minors' best interests, and (3) denying her motion to continue the best-interest hearing. We affirm.

¶ 3                                              I. BACKGROUND

¶ 4          On November 19, 2019, before B.O. was born, the State filed petitions for adjudication of wardship, alleging minors A.O., C.O., and L.O. were neglected and/or abused by respondent and the minors' father, Marty O., who is not a party to this appeal. The petitions were filed after respondent violated the safety plan implemented in an intact case, which resulted from the following facts.

¶ 5          In August 2019, the Department of Children and Family Services (DCFS) received a report that respondent, while under the influence of methamphetamine and in the presence of the minors, was waving a knife threatening to kill herself and/or Marty. The minors were moved into their paternal grandmother's house as part of a safety plan with limited and supervised contact with respondent. By October 2019, respondent had been prohibited from having any contact with the minors due to her substance abuse. Based on these facts and the history of domestic violence on Marty's part against the minors and respondent, the State filed the petitions for adjudication, alleging each minors' environment was injurious to his welfare.

¶ 6          On August 4, 2020, five days after his birth, the State took B.O. into protective custody and filed a petition for adjudication of wardship, alleging also an injurious environment due to the status of the case related to his older siblings, *i.e.*, respondent's "unsatisfactory progress" on her service plan and her recent incarceration. B.O.'s father, Bruce B., was included in the proceedings but is not a party to this appeal. Although each minor had a separate trial court case number, the proceedings were consolidated, as they are on appeal.

¶ 7        The trial court entered an adjudicatory order on September 10, 2020, and a dispositional order on October 22, 2020.

¶ 8        On September 20, 2021, the State filed a motion to terminate respondent's parental rights to each minor, alleging she was an unfit parent, as she failed to make reasonable (1) efforts to correct the conditions which were the basis for the removal of the minors (750 ILCS 50/1(D)(m)(i) (West 2020)) and (2) progress toward the return of the minors to her care within any nine-month period following the adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2020)). The State filed a notice it would be presenting evidence on the nine-month period between September 10, 2020, and June 9, 2021.

¶ 9        On February 24, 2022, the trial court held respondent's fitness hearing. The court considered the testimony of Bethany Greenwood, a child welfare specialist at Chaddock. She testified she became the caseworker on November 26, 2019, when the older three siblings were taken into shelter care out of concern for their safety based on the parents' domestic violence and substance abuse. In addition to addressing domestic violence and substance abuse, Greenwood testified, respondent was to participate in mental health counseling, parenting classes, and visitation. Respondent was also required to cooperate with Chaddock and the services providers by maintaining contact and participating in drug screens. Finally, respondent was to obtain stable housing.

¶ 10        With regard to respondent's progress during the relevant nine-month period of September 10, 2020, to June 9, 2021, Greenwood testified respondent was doing well initially. For the first two months, between September and November 2020, respondent was engaged in mental health, domestic violence, and substance abuse services, cooperating with the agency, and complying with drug screens with negative results. She had already successfully completed

parenting at Hobby Horse and had begun another class at Chaddock. She was attending weekly visitation with B.O. alone and also weekly with all four minors together. She did not have stable housing. She was residing at The Well House, a transition residence for recently incarcerated females.

¶ 11 According to Greenwood, beginning in November 2020, respondent's progress "significantly declined." She was asked to leave The Well House due to drinking. In April 2021, she admitted to Greenwood that, in February 2021, she had begun using illegal substances and was drinking up to a pint of alcohol a day. She acknowledged being unsuccessfully discharged from substance abuse services. Respondent had been using cannabis and was injecting methamphetamine daily. Greenwood referred respondent for another substance abuse evaluation. This evaluation, conducted on June 1, 2021, indicated that respondent had been substance free for one and a half years, until she relapsed in November 2020, and again in February 2021. She started using heroin in May 2021.

¶ 12 Greenwood testified respondent disclosed to her on May 3, 2021, that she would sometimes falsely report COVID-19 symptoms to avoid drug screening prior to visits, which ultimately caused her to miss 23 in-person visits with the minors between February 24 and May 7, 2021. She missed several other visits due to positive screens.

¶ 13 Greenwood also reported respondent was not engaged in mental health services beginning in November 2020. Greenwood discovered respondent had become involved in "an unhealthy relationship" with a man who respondent blamed for her relapses. Respondent also had not secured stable housing, was not communicating with the agency or the service providers, and was not keeping scheduled appointments.

¶ 14    In sum, Greenwood testified, between November 2020 and July 2021, respondent made no progress toward addressing the issues that led to the minors being removed or having the minors returned to her care.

¶ 15    On cross-examination, Greenwood acknowledged "some satisfactory things" between November 2020 and May 2021, namely respondent completed a parenting class, had appropriate interactions with the minors, and completed domestic violence counseling.

¶ 16    No further evidence was presented at the fitness hearing. The trial court found respondent to be unfit. The court stated the State had proven by clear and convincing evidence the allegations that respondent was unfit due to her failure to make reasonable (1) efforts to correct the conditions that were the basis for the removal of the minors and (2) progress toward the return of the minors during the alleged nine-month period, September 10, 2020, to June 9, 2021. The court noted that "[d]uring the first two months, [respondent] did make some efforts, did make some progress towards a return-home goal, but nothing approaching that type of progress that's contemplated by the statute, and efforts do not always translate into that type of progress that is necessary." For the "rest of those seven months," respondent was "basically out of compliance, didn't make any progress toward any type of a return-home goal, was not engaged in any services in any meaningful way, and there's no evidence that any recommendation was ever made during that time period that the minors be returned home to [respondent]."

¶ 17    The trial court proceeded immediately to the best-interest hearing, where again it heard only testimony from Greenwood. She reminded the court of the minors' ages. She said A.O. was 10, C.O. was 5, L.O. was 3, and B.O. was 18 months.

¶ 18    Greenwood testified A.O. was, at the time, in the mental health unit at Blessing Hospital due to "a situation" that arose in his relative foster home. He had been in the home since

May 28, 2021. Greenwood said she was looking into another relative foster home and was also considering residential placement because the latest was his sixth home and he has experienced "an increase in behaviors over the last eight weeks." A.O. experiences aggressive behavior, which has increased from hitting or kicking walls to physical aggression and harmful threats to his foster parents and himself. Since September 2019, A.O. has been receiving special therapy, trauma, and attachment coaching.

¶ 19    C.O. was placed in a traditional foster home on October 19, 2021, where he remains. Prior to his current placement, C.O. was also exhibiting aggressive behaviors such as hitting and kicking and had been in five other placements. His current foster parents have expressed their willingness to adopt C.O. They had some familiarity with behavioral issues and have worked "very well" with C.O. He is also receiving special therapy services.

¶ 20    L.O. and B.O. are placed together in a pre-adoptive placement with Terra A. The minors consider Terra their mother and are "extremely playful." She is meeting all of the minors' needs.

¶ 21    On cross-examination, Greenwood acknowledged she has continued to monitor respondent's progress. Respondent was successfully discharged from substance abuse rehabilitation services in August 2021. She had recently tested positive for cannabis but otherwise her screens had been negative. She had been involved in mental health services and had secured appropriate housing.

¶ 22    At the close of evidence, respondent's counsel requested a continuance, citing respondent's sobriety for the past seven months and the uncertainty of A.O.'s placement. Counsel said:

"If the situation were different in that [A.O.] had a good home that he possibly could be adopted to, I would not be asking the Court this. But under the circumstances, when we were talking about possibly institutionalizing a 10-year-old, I think the possibility of reunification with his mother should be considered, and we need to explore where she is now. I realize that she has previously been declared unfit, but that may have changed."

¶ 23     The trial court denied respondent's motion to continue, stating the "cause had been pending for several months" and there was no reason to delay the matter further "given the Court's obligation under the Juvenile Court Act [of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2020))]."

¶ 24     The trial court determined it was in the best interests of the minors to terminate respondent's parental rights. In particular, the court noted C.O., L.O., and B.O. were in adoptive placements, where they were thriving and their needs were being met. Although the future was uncertain with regard to A.O.'s placement, the court found his best chance for a permanent adoptive placement would be through DCFS's efforts. The court found the State had carried its burden of proving by a preponderance of the evidence that termination was in the minors' best interests.

¶ 25     This appeal followed.

¶ 26                         II. ANALYSIS

¶ 27     On appeal, respondent alleges, according to the headings in her brief, the trial court erred in (1) finding respondent was unfit, (2) determining termination of her parental rights was in the minors' best interests, and (3) denying her motion to continue the best-interest hearing in violation of her due-process rights and her right to counsel.

¶ 28                                    A. Unfitness Finding

¶ 29          In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 30          Here, the trial court found respondent to be an unfit parent on two grounds: (1) she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from her care (750 ILCS 50/1(D)(m)(i) (West 2020)) and (2) she failed to make reasonable progress toward the return of the minors to her care during any nine-month period following the adjudication of neglect, namely between September 10, 2020, and June 9, 2021 (750 ILCS 50/1(D)(m)(ii) (West 2020)). Although respondent mentions both grounds in a *heading* in her brief and cites case law explaining the requirements for each ground, she does not formulate any argument to either ground as required by our supreme court rules. Thus, we find she has forfeited any argument challenging the trial court's unfitness findings.

¶ 31          In the argument portion of her brief, respondent claims only the following: "The State did not meet its burden in proving failed [*sic*] to make reasonable progress in correcting the conditions that were the basis of removal of the child." This one statement inaccurately combines the requirements of two separate grounds. She further claims, even though Greenwood's testimony demonstrated respondent had adequate housing, was sober, and was engaged in services "by the time of the termination hearing," the trial court nevertheless found her unfit. This is respondent's argument in full. From these statements, it is impossible to determine whether respondent is

challenging one or both of the trial court's fitness findings. That is, she does not state a cognizable argument on either ground.

¶ 32    Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a party to set forth "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited." Respondent does not clearly define or sufficiently present any argument for our review that would satisfy the requirements of Rule 341(h)(7). See *Bublitz v. Wilkins Buick, Mazda, Suzuki, Inc.*, 377 Ill. App. 3d 781, 787 (2007). Indeed, this court has stated: " 'Mere contentions, without argument or citation to authority, do not merit consideration on appeal.' " *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 80 (quoting *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12). Respondent failed to develop her argument in any meaningful way as required. Thus, the unfitness issue is forfeited, and we will not address it. See *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37 (stating the "failure to properly develop an argument and support it with citation to relevant authority results in forfeiture of that argument").

¶ 33                    B. Best-Interest Finding

¶ 34    Although this portion of her brief is still not in compliance with Rule 341(h)(7), respondent, at least, claims the trial court erred in finding it was in the minor's best interest to terminate her parental rights. We disagree.

¶ 35    Upon a finding of parental unfitness, the proceedings move to a best-interest hearing. At the best-interest hearing, the trial court's focus shifts to the child's interest in securing "a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). When a best-interest decision must be made, the court shall consider factors listed in section 1-3 of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)). These factors include the child's physical safety and welfare,

the development of the child's identity, the child's background and ties, the child's sense of attachments including the sense of security, familiarity, and continuity of affection, the child's wishes and long-term goals, and the preferences of those available to care for the child. *Id.* A parent's wishes to continue the relationship with the child yields to the child's interests. *D.T.*, 212 Ill. 2d at 364.

¶ 36        The trial court may terminate parental rights only upon finding the State proved, by a preponderance of the evidence, the termination of those rights is in the child's best interest. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009). We will not disturb a best-interest determination unless it is against the manifest weight of the evidence. *Id.* A best-interest determination is against the manifest weight of the evidence only if it is clearly evident the State failed to carry its burden of proof or, in other words, if the finding is "unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 85.

¶ 37        Respondent argues the "fluidity of these children's behavior and potential placement situations, coupled with [her] sobriety and re-engagement with services, termination of [her] rights was not in the minor children's best interests." This, again, is her argument in full.

¶ 38        In making its best-interest determination, the trial court considered Greenwood's testimony regarding the status of each minor's placement. The two youngest minors, L.O. and B.O., were placed together in a pre-adoptive placement. C.O., who was considered to have special needs due to his behavior, was also in a pre-adoptive placement with foster parents who were handling his special needs well. Greenwood testified each minor was thriving in his placement.

¶ 39        Although A.O.'s status was uncertain in terms of placement, Greenwood testified she was diligently searching for his best option. The trial court found A.O.'s best chance for a permanent adoptive placement would be through DCFS's efforts. The court found the State had

carried its burden of proving by a preponderance of the evidence that termination was in all four minors' best interests. Considering the evidence in light of the best-interests of the minors, we find the court's order terminating respondent's parental rights was not against the manifest weight of the evidence.

¶ 40                                    C. Motion to Continue

¶ 41            Finally, respondent contends the trial court erred in denying her motion to continue the best-interest hearing after the court heard evidence of A.O.'s status and her recent successes. She claims the court "gave no compelling or substantial reason as to why the termination hearing could not be continued other than stating that proper notice of the termination was given to [her]." Again, we find respondent has forfeited her argument. Respondent does not point this court to a statute or decision in support of her argument, thus the argument is forfeited pursuant to Rule 341(h)(7). She cites no authority to support her claim the court's denial was unconstitutional or even that it had constitutional ramifications. As the State notes, the reviewing court is entitled to have issues clearly defined with the presentation of pertinent authority and cohesive arguments. *People v. O'Neal*, 2021 IL App (4th) 170682, ¶ 54. We are " 'not a repository into which an appellant may foist the burden of argument and research.' " *Id.* (quoting *People v. Jacobs*, 405 Ill. App. 3d 210, 218 (2010)). Because respondent does not properly formulate a cognizable argument on appeal for our review, we find the issue forfeited.

¶ 42                                    III. CONCLUSION

¶ 43            For the reasons stated, we affirm the trial court's judgment.

¶ 44            Affirmed.